FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 NOV  7  AM 8 37

STEPHAN HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

---

NORMAN M. SCHMITZ and STEVEN R.
DIEHL, Individually, On Behalf of All
Others Similarly Situated, and Derivatively
On Behalf of Nominal Defendant
DUOYUAN PRINTING, INC.,

      Plaintiffs,

vs.

XIQING DIAO, WENHUA GUO,
BAIYUN SUN, CHRISTOPHER
PATRICK HOLBERT, WILLIAM D.
SUH, JAMES ZHANG, LIANJUN CAI,
PUNAN XIE, SIK SIU KWAN, and CHUI
MAN LUNG EVERETT,

      Defendants,

and

DUOYUAN PRINTING, INC.,

      Nominal Defendant.

Case No. 11-CV-157-S

---

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

---

This matter came before the Court on three motions to dismiss: (1) Defendants Xiqing Diao, Wenhua Guo, Christopher Patrick Holbert, William D. Suh, Lianjun Cai, Punan Xie, and Sik Siu Kwan's "Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2)" [ECF No. 77]; (2) Defendants Xiqing Diao, Wenhua Guo, Christopher Patrick Holbert, William D. Suh, Lianjun Cai, and Punan Xie's "Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1) and 12(b)(6)" [ECF No. 79]; and (3) Defendant Sik Siu Kwan's "Motion to Dismiss the Complaint" [ECF No. 81]. Having considered the motions, the memoranda submitted in support and opposition, the record herein, and being otherwise fully advised, the Court FINDS and CONCLUDES that it has subject matter jurisdiction but lacks personal jurisdiction over the Individual Defendants.

## BACKGROUND

1.      Nominal Defendant Duoyuan Printing, Inc. (hereafter "Duoyuan" or "the corporation") is incorporated in Wyoming with its principal place of business located in Beijing, China.  It supplies offset printing equipment solely in the People's Republic of China.

2.      Plaintiffs Schmitz and Diehl were shareholders in Duoyuan at the time of the actions complained of, and they have continuously held shares in Duoyuan since.

Plaintiff Schmitz is a resident of the State of Missouri while Plaintiff Diehl is a resident of the State of Colorado.

3.     The Individual Defendants[1] are all current or former officers and/or directors of Duoyuan. All Individual Defendants resided and continue to reside in China, Hong Kong (which is an autonomous territory falling within the sovereignty of the People's Republic of China), or Africa.

4.     Plaintiffs filed a two-count complaint on April 27, 2011. Count I is a shareholder derivative action that seeks recovery of damages, alleging the Individual Defendants breached their fiduciary duties to the corporation and their breaches injured the corporation by reducing its stock value. Count II alleges a class action on behalf of all persons who held stock in the corporation and requests the Court to order the directors to hold an annual shareholder meeting, which they have not done since October 2009 in violation of Wyoming Statute § 17-16-701(a).

## FACTS

5.     Taken in the light most favorable to Plaintiffs, as required at this stage in the litigation, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1068 (10th

---

[1] "Individual Defendants" refers to Xiqing Diao, Wenhua Guo, Christopher Patrick Holbert, William D. Suh, Lianjun Cai, and Punan Xie. Defendants James Zhang and Sik Siu Kwan have been voluntarily dismissed from this lawsuit by Plaintiffs. [ECF Nos. 57, 93.] Defendants Baiyun Sun and Chui Man Lung Everett have not responded to this lawsuit, and these motions to dismiss do not include them.

Cir. 2008), the facts establish that Duoyuan was a privately-held corporation first incorporated in Wyoming in 2005 under the name "Asian Financial, Inc." In late 2009, after several allegedly profitable years, Asian Financial, Inc. changed its name and held an Initial Public Offering (IPO), where its corporate stock became available for public purchase on the New York Stock Exchange under the ticker symbol "DYP." Following the IPO, Duoyuan reported continued positive financial results in February 2010 and May 2010.

6.    In March 2010, in more apparently good news, Duoyuan announced it was changing its independent auditor from the relatively small and unknown Frazer Frost, LLP, to the much larger Deloitte Touche Tohmatsu CPA Limited, an affiliate of a "Big Four" auditing firm.

7.    In late summer of 2010, Deloitte encountered several serious discrepancies in Duoyuan's financial records.   Deloitte informed the corporation and its audit committee of the inconsistencies and requested more information in an attempt to resolve the issues.   Duoyuan's corporate officers and directors either refused to tender the information requested or stated that they did not have access to the information sought by Deloitte.   Deloitte then questioned whether it could rely on future representations from the corporation's officers and directors.

8.      In early September 2010, a meeting of the corporation's board members and audit committee members resulted in Duoyuan terminating the auditing services of Deloitte. Duoyuan announced on September 6, 2010, that it had fired Deloitte. Duoyuan has yet to retain a new independent auditor. The board and committee members who had voted against dismissing Deloitte resigned from their positions in the corporation within the next few days.

9.      In October 2010, the U.S. Securities and Exchange Commission initiated a formal investigation into whether the corporation had committed securities fraud. Additionally, following the dismissal of Deloitte, the corporation was unable to fulfill its obligations under the SEC to file its required annual and quarterly reports, resulting in it being delisted from the New York Stock Exchange. Since Duoyuan's public troubles began, its stock value has plummeted, from a high of $11.00 per share to a current value of approximately $0.04 per share.

10.     Plaintiffs spent much of 2011 and 2012 trying to obtain service on the Individual Defendants. The parties also spent much of 2012 in mediation negotiations, which have proved unsuccessful. Plaintiffs ultimately served Individual Defendants in May 2013 by alternative service, as permitted by the Court [ECF Nos. 55, 56, 58.] In answering the complaint, the Individual Defendants filed the instant motions to dismiss.

## DISCUSSION

11.    The Court will address each motion to dismiss separately.   When faced with a challenge to both subject matter and personal jurisdiction, "there is no unyielding jurisdictional hierarchy," but, "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter ...." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

### I.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

12.    Individual Defendants filed a motion to dismiss under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief could be granted.[2]   The Court will only address Individual Defendants' claim of lack of subject matter jurisdiction at this time, not answering the question of whether Plaintiffs stated a claim upon which relief could be granted because it lacks personal jurisdiction over Individual Defendants.

### A.    Applicable Law

13.    Individual Defendants contend this Court lacks subject matter jurisdiction over this action because Plaintiffs lack standing to sue.   Absent a plaintiff with proper standing, the Court lacks subject matter jurisdiction over the plaintiffs' claims.   *See*

---

[2] Defendant Sik Siu Kwan also was a party to this motion before he was voluntarily dismissed by Plaintiffs.

*Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) (federal court's jurisdiction may be invoked only by a party with proper standing).  Once challenged, the plaintiff has the burden to demonstrate that it has standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

14.   Individual Defendants assert that Plaintiffs lack standing to bring this shareholder derivative because they "fail to allege the date that they acquired stock and give no indication they purchased in the IPO."  (Defs.' Brief Supporting Mot. Dismiss Pursuant to 12(b)(1) and 12(b)(6) at 5-6, ECF No. 80.)  This constitutes a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction, which requires the Court to accept the allegations in the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

15.   Wyoming statutory law provides:

A shareholder may not commence or maintain a derivative proceeding unless the shareholder:

    (i)    Was a shareholder of the corporation at the time of the act or omission complained of, or became a shareholder through transfer by operation of law from one who was a shareholder at the time; and

    (ii)    Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

Wyo. Stat. Ann. § 17-16-741(a) (2013).  Similarly, the federal rules require a plaintiff to be a "shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law."  Fed. R. Civ. P. 23.1(b)(1).

### B.   Analysis

16.   The Court need not spend much discussion on this issue.   In their Complaint, each named Plaintiff specifically alleges he "is a shareholder of nominal defendant Duoyuan, was a shareholder of Duoyuan at the time of the wrongdoing alleged herein, and has been a shareholder of Duoyuan continuously since that time." (Compl. ¶¶ 9-10, ECF No. 1 at p. 4.)  Accepting Plaintiffs' assertions as true, as is required here, the Court finds that Plaintiffs have satisfied the requirements for standing under both Wyoming Statute § 17-16-741(a) and Federal Rule of Civil Procedure 23.1(b)(1).[3]

### C.   Conclusion

17.   Plaintiffs have carried their burden of establishing their standing to bring this action.  Consequently, Individual Defendants' request to dismiss the complaint for lack of subject matter jurisdiction must be denied.  Additionally, Individual Defendants' request to dismiss for failure to state a claim upon which relief can be granted is moot.

---

[3] During oral argument on this motion, Plaintiffs' counsel offered to submit verification as to Plaintiffs' stock ownership and the date upon which it was acquired.  At this stage of the proceeding, the Court believes the allegations set forth in the complaint are sufficient, for now.

## II.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

18.   Individual Defendants seek to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), arguing the Court lacks personal jurisdiction over them.

### A.   Applicable Law

19.   "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).   Wyoming's long-arm statute allows its courts to "exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution."   Wyo. Stat. Ann. § 5-1-107(a) (2013).   "Because this statute extends Wyoming jurisdiction to the limit of the federal constitution, 'our only concern is whether … maintenance of the suit … would … offend the due process clause of the Fourteenth Amendment.'"   *Kuenzle*, 102 F.3d at 455 (quoting *Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982)).

20.   In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court held that due process would not be offended by the exercise of

jurisdiction over a nonresident defendant if that defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940); *Kuenzle*, 102 F.3d at 455.

21.    If a nonresident party has "continuous and systematic general business contacts with the forum state," general jurisdiction may exist. *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (internal quotation marks omitted).    General personal jurisdiction permits the forum to resolve any dispute involving that party, not just the dispute at issue. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).    In the instant case, however, Plaintiffs have not argued that any defendant has continuous and systematic contacts with Wyoming to warrant general personal jurisdiction.    Thus, the Court focuses on specific personal jurisdiction, "i.e., jurisdiction specific to this dispute—and its attendant 'minimum contacts' test." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

22.    The Tenth Circuit recently explained the minimum contacts required for specific personal jurisdiction as follows:

"Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can

> be described as fair and just." *Dudnikov* [*v. Chalk & Vermilion Fine Arts, Inc.*], 514 F.3d [1063,] 1070 [10th Cir. 2008]. To implement this principle, courts typically make three inquiries: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

*Newsome*, 722 F.3d at 1264.

23.    The plaintiff bears the burden of demonstrating sufficient minimum contacts for personal jurisdiction. *Kuenzle*, 102 F.3d at 456. If the plaintiff satisfies its minimum contacts burden, the burden then shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (quoting *Dudnikov*, 514 F.3d at 1080).

**B.    Analysis**

24.    For ease of discussion, the Court will address the three inquiries of the personal jurisdiction analysis separately. However, before beginning that analysis, the Court must answer the preliminary question of whether Individual Defendants should be treated as a single entity or whether the Court must address each Individual Defendant separately.

25.     Plaintiffs treat each Individual Defendant as identical in all material respects.  Plaintiffs allege that all Individual Defendants reside outside the United States.  Plaintiffs allege that Individual Defendants' actions can only be given effect in the state where the corporation is located—Wyoming.  Plaintiffs allege that all Individual Defendants took intentional actions that breached fiduciary duties owed to Duoyuan.  Plaintiffs also allege that Individual Defendants' physical locations are irrelevant to the issue and the lawsuit.  (Pls.' Memo. of Law in Opposition to Mot. to Dismiss Compl. Pursuant to Rule 12(b)(2), at 2.)  Accepting these allegations as true for purposes of this motion, there is no theoretical problem with analyzing personal jurisdiction over Individual Defendants as a group.  *See Newsome*, 722 F.3d at 1266.  Accordingly, the Court will treat Individual Defendants as materially identical for personal jurisdiction purposes.

### Whether Individual Defendants Purposefully Directed Their Activities at Residents of the Forum State

26.     Purposeful direction in a tort-based lawsuit, such as this one,[4] has three elements: (a) an intentional action (b) expressly aimed at the forum state, (c) with

---

[4] *See Newsome*, 722 F.3d at 1264 (describing a suit against corporate directors and officers for breach of fiduciary duties as "tort-based").

knowledge that the brunt of the injury would be felt in the forum state. *Newsome*, 722 F.3d at 1264-65, 1268.

    (a)    *Intentional Action*

    27.    The intentional action element warrants little discussion. Plaintiffs claim that Individual Defendants intentionally acted in a wrongful manner by falsely reporting inflated financial information to induce the public to invest in Duoyuan. Additionally, there is no suggestion that Individual Defendants acted unintentionally when certifying allegedly false financial reports and voting to terminate Deloitte rather than comply with Deloitte's investigation. Therefore, the Court finds that Plaintiffs satisfy the intentional action element of the purposeful direction inquiry.

    (b)    *Expressly Aimed at Forum State*

    28.    The express aiming element focuses on a defendant's intentions and requires Wyoming to have been the "focal point" of the tort. *Id.* at 1268 (quoting *Dudnikov*, 514 F.3d at 1074). The Tenth Circuit has taken a "somewhat more restrictive approach" to this element, holding that the forum state itself—and not merely a known resident of the forum state—must be the focal point of a defendant's actions. *Dudnikov*, 514 F.3d at 1075 n.9. It is at this point that the personal jurisdiction analysis begins to

disfavor Plaintiffs.   Comparison of the instant facts to other cases helps to define the express aiming element. *Newsome*, 722 F.3d at 1268.

29.   Perhaps most relevant to the instant case is *Newsome* itself.   There, a bankruptcy trustee for a wholly-owned subsidiary corporation brought suit against the parent corporation's directors (some of whom were also directors or officers of the subsidiary corporation) for alleged breaches of fiduciary duties.   *Id.* at 1262.   All defendants were Canadian citizens or entities domiciled in Canada.   *Id.*   The bankruptcy trustee sued in Oklahoma even though the business was a Canadian-owned Delaware corporation.   *Id.*   The bankruptcy trustee alleged that the individual defendants conspired to maximize their (and the parent corporation's) profits by shifting unsustainable debt from the parent to the subsidiary.   *Id.*   The individual defendants challenged jurisdiction, and the Tenth Circuit concluded the defendants had sufficient contacts with Oklahoma to allow the Oklahoma federal district court to exercise personal jurisdiction.   *Id.*   In the "express aiming" portion of its analysis, the Tenth Circuit found that the individual defendants knew that the subsidiary operated exclusively in Oklahoma, "making Oklahoma the focal point of any tort against" the subsidiary.   *Id.* at 1269.   Therefore, held the Tenth Circuit, the individual defendants expressly aimed their wrongdoing at

Oklahoma when they drowned the subsidiary, which operated exclusively in Oklahoma, with overwhelming debt. *Id.*

30.    The instant case is very nearly the opposite of *Newsome*. Here, Duoyuan, a Wyoming corporation, operates exclusively in China. Thus, under *Newsome's* reasoning, China is the "focal point" of any of wrongful acts perpetuated against the corporation. Individual Defendants expressly aimed their wrongdoing at a Chinese forum (likely Beijing, where the corporation operates), not Wyoming.

31.    Next, in *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000), *overruled in part on other grounds in Yahoo! Inc. v. La Ligue Contre Le Racisine Et L'Antiseinitisine*, 433 F.3d 1199 (9th Cir. 2006) (en banc), the owner of The Masters golf tournament (a Georgia corporation holding the "Masters" trademark) sent a letter to a Virginia internet domain name registrar disputing a California computer business's use of the web address "masters.com." *Bancroft*, 223 F.3d at 1085. The California business sued the Georgia corporation in a California court, seeking declaratory judgment for the right to use the web address. *Id.* The Georgia corporation contested personal jurisdiction. *Id.* Although the Georgia corporation sent its letter to Virginia rather than California, the Ninth Circuit found it satisfied the express aiming element because the Georgia corporation "individually targeted" the California computer

business, "a California corporation doing business almost exclusively in California." *Id.* at 1088.

32.    Here, Plaintiffs assert that Individual Defendants targeted Duoyuan, a Wyoming corporation, purportedly making Wyoming the focal point of the case. "[B]y harming a Wyoming corporation, which is precisely what the Defendants are alleged to have done, the directors and officers of the corporation established contacts with Wyoming and affirmatively directed conduct toward Wyoming." (Pls.' Memo. in Opposition at 2.)  In comparison to *Bancroft*, though, the argument for individualized targeting is weak in the instant case.   Specifically, Duoyuan has not conducted any business in Wyoming; all of its operations were in China.  The Court finds it significant that the true effect of Individual Defendants' alleged conduct has not been felt in Wyoming.

33.    Finally, in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004), an Ohio car dealership used a photograph of the actor-turned-governor-turned-actor Arnold Schwarzenegger in its local advertisements without Schwarzenegger's permission. *Id.* at 799. "The advertisement featured a photograph of Arnold Schwarzenegger in *The Terminator* (1984), one of his most popular film roles in which he appears as a murderous cyborg, '(a cybernetic organism; i.e., a robot whose

mechanical parts are encased in living tissue ...).'" *Dudnikov*, 514 F.3d at 1076 (quoting

*Schwarzenegger*, 374 F.3d at 799).   When Mr. Schwarzenegger sued in a California

court, the Ninth Circuit found California did not have personal jurisdiction over the car

dealership because the advertisements were not "expressly aimed" at the forum state of

California.  *Schwarzenegger*, 374 F.3d at 807.   Instead, they were expressly aimed at

Ohio, "to entice Ohioans to buy or lease cars from" the car dealership in Ohio "and, in

particular, to 'terminate' their current car leases."  *Id*.   The advertisements were never

circulated in California, and the Ohio car dealership had no reason to believe that any

Californians would see the ads.  *Id*.

> It may be true that [the car dealership's] intentional act eventually caused
> harm to Schwarzenegger in California, and [the car dealership] may have
> known that Schwarzenegger lived in California.  But this does not confer
> jurisdiction, for [the car dealership's] express aim was local.

*Id*.   Again, the "focal point" of the controversy was where the defendant company

conducted its business, which was limited to Ohio.

    34.    The instant case is similar to *Schwarzenegger* in the sense that Individual

Defendants' alleged conduct may have eventually caused harm to Duoyuan in Wyoming

by causing a decline in the corporation's value.   However, Individual Defendants'

express aim was local to China, where Duoyuan conducted its business.   Additionally,

there is no allegation that a single shareholder of Duoyuan resides in Wyoming. Therefore, it cannot be said that Individual Defendants intended to entice Wyomingites to purchase Duoyuan stock at a nefariously-inflated price.

35.    Therefore, the Court finds that Plaintiffs cannot satisfy the "express aiming" element of the purposeful direction inquiry because Wyoming was not the "focal point" of Individual Defendants' alleged wrongdoing. *See Newsome*, 722 F.3d at 1268 (quoting *Dudnikov*, 514 F.3d at 1074). Individual Defendants did not expressly aim their alleged misconduct at Wyoming.

      *(c)*     *Knowledge that the Brunt of the Injury Would be Felt in Forum State*

36.    The third element of the purposeful direction inquiry "concentrates on the consequences of the defendant's action—where was the alleged harm actually felt by the plaintiff." *Dudnikov*, 514 F.3d at 1075. Again, the Court finds a comparison to *Dudnikov* and *Newsome* to be helpful in analyzing this element.

37.    In *Dudnikov*, the Tenth Circuit found the "brunt of the injury" element was met where the plaintiffs' business was located in Colorado and the defendant knew its actions would affect the business. *Dudnikov*, 514 F.3d at 1077. Similarly, in *Newsome*, the Tenth Circuit found that the forum state of Oklahoma felt the brunt of the injury

where the director defendants knew the corporation (that they saddled with unsustainable debt) operated exclusively in Oklahoma. *Newsome*, 722 F.3d at 1269.

38.     Contrasting *Dudnikov* and *Newsome* with the instant case is telling. Here, Duoyuan has never operated in Wyoming (or even the United States). It conducted business exclusively in China and its corporate headquarters are located in Beijing. Additionally, there is no allegation that any shareholder of Duoyuan resides in Wyoming. *See Newsome*, 722 F.3d at 1268 ("a court evaluating personal jurisdiction need not ignore the creditors' or shareholders' places of residence simply because the cause of action [for breach of fiduciary duty] belongs to the corporation"). Therefore, the brunt of the injury from Individual Defendants' wrongful conduct cannot be said to have occurred in Wyoming. Specifically, while recognizing that Duoyuan is a Wyoming corporation, Duoyuan and its shareholders were injured primarily in China or, at a minimum, outside of Wyoming. *See id.* (concluding that the Delaware corporation and its creditors, to whom the defendants owed a fiduciary duty, were injured primarily in Oklahoma because that is where the corporation conducted its business).

39.     Considering the three elements of the purposeful direction inquiry, the Court concludes that Individual Defendants did not direct their allegedly wrongful activities at Wyoming. Plaintiffs have not satisfied the purposeful direction test as to

Individual Defendants.   The Court is even more convinced of this conclusion when examining the case law relied upon by the parties.

40.   Individual Defendants primarily rely on the United States Supreme Court case of *Shaffer v. Heitner*, 433 U.S. 186 (1977).   There, a nonresident shareholder of Greyhound Corp., a Delaware corporation with its principal place of business in Phoenix, Arizona, brought a shareholder's derivative action against current and former officers and directors of the corporation for breach of fiduciary duties.   *Id.* at 189.   The plaintiff/appellee filed suit in Delaware.   *Id.*   The plaintiff/appellee never alleged that any of the individual defendants/appellants ever set foot in Delaware.   *Id.* at 213.   The plaintiff first alleged that Delaware had in rem jurisdiction over the defendants because each defendant owned stock in the company and a statute pronounced all stock of a Delaware corporation was to be considered physically present in Delaware.   *See id.* at 191-94.   The Supreme Court rejected this argument because the defendants' stock ownership was unrelated to the lawsuit; their ownership of the stock was unrelated to their fiduciary duties.   *Id.* at 213.   As an alternative, the plaintiff argued that the defendants' positions as directors and officers of a Delaware corporation provided sufficient minimum contacts with Delaware for it to assume jurisdiction over them.   *Id.* at 213, 215.   The Supreme Court expressly rejected this contention.   *Id.* at 214-16.

> [T]his line of reasoning establishes only that it is appropriate for Delaware law to govern the obligations of appellants to Greyhound and its stockholders.  It does not demonstrate that appellants have "purposefully avail(ed themselves) of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, [357 U.S. 235,] 253, 78 S. Ct. [1228,] 1240 [1958], in a way that would justify bringing them before a Delaware tribunal.  Appellants have simply had nothing to do with the State of Delaware.  Moreover, appellants had no reason to expect to be haled before a Delaware court.

*Id.* at 216.

41.    The Court concludes *Shaffer* is on point and controlling.  There, the plaintiffs/appellees explicitly argued that the individual defendants/appellants were subject to Delaware jurisdiction because they accepted positions as officers or directors of a Delaware corporation and their alleged wrongdoing arose from their actions as officers or directors.  *Id.* at 215-16.  The U.S. Supreme Court determined that simply was not enough to justify forcing them before a Delaware court.  *Id.* at 216.  Likewise, Plaintiffs here contend that "Defendants' actions as directors and officers of Duoyuan satisfy the 'purposeful availment' requirement of due process."  (Pls.' Memo. in Opposition at 9.)  They assert that "accepting and exercising" positions as officers and/or directors of a Wyoming corporation is sufficient for personal jurisdiction.  (*Id.* at 8-9.)  However, as was the case in *Shaffer*, Individual Defendants' positions as directors and/or

officers of a Wyoming corporation and their actions as such simply are not enough to justify forcing them before a Wyoming court.

42.     In response, Plaintiffs discuss two different cases.  However, the Court finds these cases distinguishable from *Shaffer* and unpersuasive.

43.     First, Plaintiffs rely on the case of *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir. 1987).  There, the plaintiff was a minority stockholder in a West Virginia corporation and filed a shareholder derivative action in a West Virginia court. *Id.* at 524.  The plaintiff claimed the director-defendants breached their fiduciary duties by accepting a merger that significantly undervalued the corporation. *Id.*  The corporation conducted business only in West Virginia. *Id.* at 524, 528.  The director-defendants, however, were not residents of West Virginia, and the plaintiff never alleged that the director-defendants were ever physically present in West Virginia for any purpose relating to the challenged merger. *Id.* at 524-25.  The Fourth Circuit held that the director-defendants' positions and actions as directors of the West Virginia corporation constituted sufficient contacts to be haled into a West Virginia court. *Id.* at 529.

44.     The Court finds *Pittsburgh Terminal* does not control here for two reasons. First, as was important in both *Dudnikov* and *Newsome*, the Fourth Circuit in Pittsburgh

Terminal found it significant that the West Virginia corporation conducted business exclusively in West Virginia. *Id.* at 528 ("Unlike *Shaffer*, this is not a case where the corporation is a phantom resident of the chartering state.... [The corporation] apparently does business only in West Virginia, and its president lives and maintains his office in West Virginia."). The instant case is readily distinguished on this basis because Duoyuan *is* a phantom resident of Wyoming, and it does business only in China. Further, none of its officers or directors resides in Wyoming.

45. Second, the *Pittsburgh Terminal* court's reasoning is unpersuasive. *Pittsburgh Terminal* refused to follow *Shaffer* because it found that the Supreme Court in *Shaffer* "did *not* hold, however, that the acceptance and exercise of a directorship in a domestic corporation was an insufficient contact to allow jurisdiction. In fact, the implications of the Court's language suggest just the opposite." *Id.* at 526 (emphasis in original). The Supreme Court in *Shaffer*, however, did directly address the argument that "by accepting positions as officers or directors of a Delaware corporation, appellants performed the acts required by *Hanson v. Denckla*," which would grant Delaware personal jurisdiction over the officers or directors. *Shaffer*, 433 U.S. at 215. The Supreme Court explicitly rejected this argument, stating

> "this line of reasoning establishes only that it is appropriate for Delaware
> law to govern the obligations of appellants to Greyhound and its

> stockholders.  It does not demonstrate that appellants have 'purposefully avail(ed themselves) of the privilege of conducting activities within the forum State ...' in a way that would justify bringing them before a Delaware tribunal."

*Id.* at 216 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The Supreme Court expressly rejected the distinction upon which *Pittsburgh Terminal* relies.  Based on the material distinction and unpersuasive reasoning outlined here, the Court concludes that *Pittsburgh Terminal* should not control the question of personal jurisdiction over Individual Defendants in the instant case.

46.    Plaintiffs also rely heavily on the Nevada Supreme Court case of *Consipio Holding, BV v. Carlberg*, 282 P.3d 751 (Nev. 2012).   There, shareholders filed a derivative action, contending that respondents breached their fiduciary duties. *Id.* at 753-54.  The corporation was incorporated in Nevada, but had its principal place of business in Spain.  *Id.* at 754.  The respondents were all citizens and residents of European nations, and few of the respondents had ever visited Nevada.  *Id.*  The Nevada Supreme Court held that "[o]fficers or directors who directly harm a Nevada corporation are affirmatively directing conduct toward Nevada, and by doing so can be subject to personal jurisdiction even without a director consent statute."  *Id.* at 756.  "Thus, a

district court can exercise personal jurisdiction over nonresident officers and directors who directly harm a Nevada corporation." *Id.*

47.     The Nevada Supreme Court's reasoning, though, suffers from flaws similar to those found in *Pittsburgh Terminal*.   Specifically, the *Consipio* court rather confusingly states, "However, *Shaffer* does not prohibit a state court from exercising jurisdiction over nonresident officers and directors who directly harm a corporation that is incorporated in that state, even when the state does not have a director consent statute." *Id.* at 755.   The Supreme Court directly addressed that issue and held opposite of the *Consipio* court.   The nonresident officers and directors in *Shaffer* were alleged to have directly harmed Greyhound, which was incorporated in Delaware, when Delaware did not have a director consent statute. *Id.* at 189-90, 214.   The Supreme Court held that the nonresident officers and directors did not have sufficient contacts with, or purposely avail themselves of the privilege of conducting business within, the forum state of Delaware. *Id.* at 213-16.   Accordingly, the *Consipio* court's interpretation of *Shaffer* and reasoning for finding personal jurisdiction is questionable and unconvincing.

48.     In the instant case, the Court also examines the Individual Defendants' quantity and quality of their contacts with Wyoming. *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quoting *OMI Holdings, Inc. v. Royal*

*Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).   Here, the Individual

Defendants' contacts with Wyoming are minimal.   During the times in question and

since, Individual Defendants resided in China, Hong Kong, or Africa.   They have never

been to Wyoming.   They do not own personal or real property in Wyoming.   They do not

have bank accounts in Wyoming.   They have had very little communication with anyone

in Wyoming, consisting entirely of phone calls and/or emails with corporate counsel

located in Cheyenne, Wyoming, but even that communication was sparse.

49.     Based on the Court's findings that Individual Defendants did not expressly

aim their allegedly wrongful conduct at Wyoming and that the brunt of the injury was not

felt in Wyoming, combined with the United States Supreme Court's on-point

determination in *Shaffer v. Heitner*, the Court concludes that Plaintiffs have not satisfied

their burden of proving that Individual Defendants purposefully directed their activities at

Wyoming.   Individual Defendants have not created a "substantial connection" with

Wyoming simply by accepting positions as directors and/or officers of a Wyoming

corporation and acting within those positions. *See Emp'rs Mut. Cas.*, 618 F.3d at 1160

(quoting *OMI Holdings*, 149 F.3d at 1091).   There simply is not enough of a connection

between Individual Defendants and Wyoming that they "should reasonably anticipate

being haled into court" in Wyoming. *Id.*

<u>Whether Plaintiffs' Injuries Arose Out of Individual Defendants' Forum-Related Activities</u>

50.     The specific personal jurisdiction analysis also requires "the plaintiff's injuries [to] arise out of defendant's forum-related activities." *Newsome*, 722 F.3d at 1269 (quoting *Dudnikov*, 514 F.3d at 1071).   There must be a "nexus" between the defendant's forum-related contacts and the cause of action. *Emp'rs. Mut. Cas.*, 618 F.3d at 1160 (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1291 (10th Cir. 2007)).   When a controversy is related to or "arises out of" a defendant's contacts with the forum state, the U.S. Supreme Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. *Shaffer*, 433 U.S. at 204.

51.     The Tenth Circuit has stated that

there are potentially two tests here—the but-for test and the proximate cause test:

> Under the [but-for] approach, any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction.   The [proximate cause] approach, by contrast, is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.

*Newsome*, 722 F.3d at 1269-70 (quoting *Dudnikov*, 514 F.3d at 1078).   The Tenth Circuit has not, as of yet, chosen one test over the other. *Id.*

52.     The Tenth Circuit's ultimate election does not affect this case, however, because Plaintiffs cannot satisfy either test.  Considering the more restrictive proximate cause approach, the Individual Defendants' contacts with Wyoming (as negligible as they are) simply are not relevant to the merits of Plaintiffs' claims.  Individual Defendants are accused of taking action in China which damaged the value of a corporation operating entirely in China.  Their insignificant contacts with Wyoming are not relevant to their alleged wrongful conduct.  *See Newsome*, 722 F.3d at 1270 (finding that the plaintiff's allegation that the individual defendants "knowingly acted in Canada to destroy a company operating entirely in Oklahoma" satisfied the proximate cause test for personal jurisdiction in Oklahoma).

53.     Additionally, under the but-for test, none of Individual Defendants' contacts with Wyoming fall within the causal chain leading to Plaintiffs' alleged injuries. Plaintiffs have offered no evidence demonstrating how their alleged injuries are "but for" causally connected to Individual Defendants' activities in Wyoming.  In short, there is only a miniscule, if any, relationship between the forum and Individual Defendants' alleged wrongdoing.  Individual Defendants' limited contacts with Wyoming are not a but-for cause of this lawsuit.  *See Dudnikov*, 514 F.3d at 1079 (finding that the defendants' contacts with Colorado, which consisted of shutting down Colorado-based

plaintiffs' eBay auction and sending emails threatening to sue plaintiffs, satisfied the but-for test for personal jurisdiction in Colorado). The alleged conduct giving rise to this action had no meaningful association with Wyoming. The only connection to Wyoming, that Duoyuan was incorporated in the state, remains outside the causal chain leading to Plaintiffs' alleged injuries.

54.     It cannot be said that Plaintiffs' alleged injuries arose out of Individual Defendants' remote connection to Wyoming. The Court concludes that Plaintiffs have not satisfied their burden of proving that their injuries arose out of Individual Defendants' forum-related activities.

55.     Having determined that Plaintiffs have failed to show that Individual Defendants purposefully directed their activities at Wyoming or that Plaintiffs' injuries arose out of Individual Defendants' activities in Wyoming, the Court concludes that Plaintiffs have not established minimum "contacts, ties, or relations," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945), with Wyoming sufficient to give its courts jurisdiction over Individual Defendants. They have not purposefully availed themselves of the privilege of conducting business in Wyoming "in a way that would justify bringing them before a [Wyoming] tribunal." *Shaffer*, 433 U.S. at 216.

<u>Traditional Notions of Fair Play and Substantial Justice</u>

56.     When a plaintiff satisfies its minimum contacts burden, the burden then shifts to the defendant to show that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (quoting *Dudnikov*, 514 F.3d at 1080).

57.     Having determined that Plaintiffs have not met their burden of proving minimum contacts for personal jurisdiction and that *Shaffer v. Heitner* applies to this case, the burden does not shift to Individual Defendants.

**C.     Conclusion**

58.     Exercising personal jurisdiction over Individual Defendants in this case would offend the due process clause of the Fourteenth Amendment due to the lack of minimum contacts between Individual Defendants and Wyoming.     Accordingly, exercising personal jurisdiction in this case is not permitted by Wyoming's long-arm statute.[5]

---

[5] During oral argument on this motion, Plaintiffs' counsel posited that if jurisdiction does not exist in Wyoming, the only other viable and unsatisfactory forum would be China. This Court cannot answer the broad question of where personal jurisdiction over Individual Defendants might exist; it can only determine whether personal jurisdiction exists in Wyoming. Further, the Court will not get into the public policy discussion other than to observe that at least twelve other states have guaranteed their jurisdiction over corporate directors and/or officers by enacting a director consent statute, which "treats acceptance of a directorship as consent to jurisdiction in the State." *Shaffer*, 433 U.S. at 216; *see, e.g.*, Del. Code Ann. Tit. 10, § 3114 (2009); Wis. Stat. Ann. § 801.05(8) (2013). Wyoming has not enacted such a statute. Admittedly, since the Supreme Court decided *Shaffer* in 1977, the reach and potential impact of corporate activities has expanded, not only from state to state, but from nation to nation.  It is now not

## CONCLUSION AND ORDER

59.     For the reasons discussed herein, the Court holds that it possesses subject matter jurisdiction over this case because Plaintiffs have standing to bring this action. The Court, however, lacks personal jurisdiction over Individual Defendants.  Individual Defendants' miniscule contacts with Wyoming are not such that they should reasonably anticipate being haled into court here.  Plaintiffs cannot carry their burden of proving sufficient minimum contacts for personal jurisdiction, and *Shaffer v. Heitner*, 433 U.S. 186 (1977), controls here.

**IT IS THEREFORE ORDERED** that Individual Defendants' "Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1) and 12(b)(6)" [ECF No. 79] is hereby **DENIED**.  Individual Defendants' demand to dismiss this action for lack of subject matter jurisdiction is denied because the Court concludes that it possesses subject matter jurisdiction.  Individual Defendants' demand to dismiss the complaint for failure to state a claim upon which relief can be granted is denied as moot due to the Court's lack of personal jurisdiction over Individual Defendants.

---

uncommon to have corporate officers and/or directors who reside in foreign nations, have never set foot inside the state of incorporation, and exercise all of their corporate activities via laptop computer. That being said, the decision in *Shaffer* remains binding precedent that in this Court's view cannot be meaningfully distinguished from the facts in this case.

**IT IS FURTHER ORDERED** that Individual Defendants' "Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2)" [ECF No. 77] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Xiqing Diao, Wenhua Guo, Christopher Patrick Holbert, William D. Suh, Lianjun Cai, and Punan Xie are hereby **DISMISSED** from this lawsuit.

**IT IS FINALLY ORDERED** that Defendant Sik Siu Kwan's "Motion to Dismiss the Complaint" [ECF No. 81] is hereby **DENIED** as moot because Plaintiffs voluntarily dismissed her from this lawsuit [ECF No. 93].

**ORDERED** this ___7th___ day of November, 2013.

Scott W. Skavdahl
United States District Judge